States Number 25-1074, D and A Business Investments LLC, doing business as THC smokes petitioner, versus United States Food and Drug Administration. Mr. Nabar for the petitioner, Mr. Peters for the respondent. Good morning, Your Honors. Jared Nabar for the petitioner, D and A Business Investments. So after JARCSI, it's clear that the FDA cannot adjudicate the civil money penalties in its administrative system under the Tobacco Control Act statutes regarding tobacco product violations. And I think the most important point to this argument is the JARCSI decisions references to earlier decisions reflecting that the most important consideration here is the remedy in determining not only whether the Seventh Amendment applies in the first instance which FDA has conceded, but also I think it controls the entire outcome of this case on the Seventh Amendment claim. You're raising some really important questions about public rights doctrine, the interplay between JARCSI and Atlas Roofing. The Blue Brief doesn't address any of this. You don't cite JARCSI, you don't cite Atlas, you don't cite the public rights doctrine, you just apply the first half of a two-part test, which is the easy part for you. How can we do something, you know, very substantial on your request when you haven't given us anything to work with? Well, Your Honor, my reading of JARCSI is that JARCSI very clearly said that the public rights doctrine is an exception. It's a narrow extra-textual exception to this Seventh Amendment guarantee of a jury trial right for legal claims. And so it was the FDA's duty to raise that objection if they're going to assert it, if they're going to rely upon it. And we did, in fact, address the issue that I think decides this whole issue. Again, not only the issue of... The analysis is clearly under JARCSI, under Toll, and Grimm-Fanciera before it has two parts. One, they say, is the Seventh Amendment implicated? And number two, does the public rights doctrine allow Congress to assign an otherwise legal claim to an agency, right? And you do cite JARCSI, but only on this first point, this Toll point, about the remedy is punitive and therefore the Seventh Amendment is implicated. Well, I guess just let me... I'll move on beyond my first point in response, Your Honor, but again, the first point is, and the FDA hasn't disputed this, my reading of JARCSI is that because this is a very narrow exception to this presumptively applicable doctrine, that's what JARCSI says. It's presumptively the right to a jury trial in this context. If the FDA wants to make an argument that there's this narrow exception that applies, then that's their duty. And they haven't... They have not disputed my view of that issue in their briefing. I think they have in their briefing. They've talked about... I mean, even where the Seventh Amendment would apply were the case filed in federal court, if it's a public right. So you only go so far as part of the Seventh Amendment analysis. You don't address the public rights question. And I suppose you think that works because if you think that everything subject to the Seventh Amendment is not a public right, but they've taken the position, and I think that's the better reading of JARCSI, that there is a category of public rights that might, were they filed in federal court, be entitled under the Seventh Amendment to a jury trial, but that may nonetheless be assigned without a jury to initial adjudication in an agency. They have taken that position quite clearly. And I don't see you to be really responding and consistent with what JARCSI... JARCSI doesn't overturn Atlas Roofing, for example, which seems... Because you're not accounting for that. Well, okay. First of all, I want to be clear. We have very clearly responded to the public rights argument, which they raised in their response brief. One of the issues here is that under the limited judicial review that's allowed under this administrative review system that we're in, there was no litigation of this issue below except us. And that puts us in a weird situation. I take your point, this language about presumption of private rights, and do you think of this as a burden of production in an evidentiary sense? Yeah, maybe it's the government's burden to raise public rights because it's an exception. I get that. And it wasn't raised... It wasn't litigated below because the agency said we can't deal with this. But on the other hand, you're the appellate, and you have to fairly tee up the issue for us in your opening brief. And I know it's just very to get our arms around this with no help from you on that point. Well, again, I think because of the nature of this as a narrow exception and the weird procedural posture that we're in, I mean, essentially, our opening brief was the first time that we could fully address this issue. We raised it below, and the judge and the administrative judge refused to consider it in the Department of Appeals Board. That's correct. So our first time that we had the opportunity to really put this issue into the court... And you don't think a fair development of that issue would have included, I don't know, citing the public rights doctrine, distinguishing it, arguing that nothing is left of it after jarcossy, whatever position you want to take? Well, we don't take the position that nothing's left of it. But I think what's left out of the government's argument here is that the public rights exception, especially under jarcossy, I realize there's been confusion, and then the Supreme Court hasn't spoken clearly about what exactly is the scope of this doctrine. That's clear. Lots of the circuit courts coming after jarcossy have also noted that. You say that the public rights, in your reply brief, that the public rights exception is reserved for claims within the historical pedigree of adjudication in the political branches. If I read jarcossy also to ask whether and to what extent the claim underlying the enforcement action resembles a pre-existing legal claim. In other words, if it wasn't of a category that historically was adjudicated initially by the political branches, jarcossy itself goes through and says, look, here we have something that's an analog of common law fraud. They don't say securities cases were not historically treated as public rights. They go through this other historical context question of whether it resembles a pre-existing legal claim. If that's the right way to read jarcossy, what is the pre-existing common law claim that resembles the FDA's enforcement action here? Well, I think, and with respect to your honor, I think that the question conflates two separate issues. There's an alternative holding in jarcossy, or there's two parts of the analysis of how do you get to whether the Seventh Amendment applies, which again, FDA's conceded. They're not arguing the Seventh Amendment is not implicated here. I'm talking about the public rights analysis. Okay. So with regard to public rights, to finish my point earlier, and this is part of the reason why Judge Cassis, we didn't raise it affirmatively ourselves in the opening brief, because it is a narrow exception. And the way that jarcossy discusses it, it's limited to, there has to be historical antecedent of a type of dispute that's adjudicated in the non-judicial branches, in the executive and legislative branch. You look at the tribal adjudications, maritime admiralty law, immigration system stuff, tariffs. Those are all the examples that are in the jarcossy opinion. This is a new statutory claim that was only enacted in 2009, and then applied to this industry in 2016. This clearly does not fall with any of the historical antecedents identified in this. To follow up, and I'll let you finish your point, but before we get too far into it, although you're not stating this expressly, but what it seems to me is there's a dispute between you and the government here. And the dispute is, whose burden is it? In order to invoke the public rights exception, is it the burden of the government to show that the cause of action or whatever the controversy here is traditionally within equity or within some area where juries were not required? That's one way of looking at it, and that's your way of looking at it. But on the other hand, the government may be saying that you have to show that on the public rights issue, you have to show that the cause of action here or the controversy is traditional within the common law course of 1789 in England. And so it's a burden question that is separating you from the other side. And, you know, I'm looking at your reply brief right now where you discuss this, and you make this point in short, the FDA has not cited a single case evidencing the type of historical antecedent required to board its position. Like I said, that's an assumption on your part that it was their burden to show that. Well, let me, I think the clearest answer I can give you, Judge Randolph, is that another quote from Jarczy at page 134, where they said, quoting Tull, a far older case, they said, quote, civil penalties are a punitive remedy that the Supreme Court has recognized could only be enforced in courts of law. That's Jarczy quoting from Tull from 1987. And here, we're talking about a new statutory claim. That gets you over the one hump. I don't understand this public rights thing, because if you're in a common law court because it's a civil penalty, you're in a common law court, and now you have to prove that you should be in a common law court. I mean, I don't get it. But anyway, let me ask you, although you didn't address this, it seems to me that an action for misbranding, which is what your client got charged with, is analogous to a common law court fraud action. If I buy a product in England in 1780, and it's misbranded, don't I have a right to sue and to get compensated for being misled? I think it sounds to me like it's squarely within fraud. Well, I think that's true. I would agree with that. And I think Amiki cites some cases to that effect. Actually, there are state cases to that effect. Well, right. And so I agree with that, Your Honor. And we didn't spend a lot of time on it in our reply, because, again, that was dealt with, I think, pretty ably by Amiki. But also, under Jarczy, it's not the most important point, and I think it's so clear that the quote I just read is dispositive of this issue. This is a civil penalty that the government is seeking. It's entirely punitive. There's nothing restorative about it. How is Judge Gorsuch's stance that once you show that it's within the common law or legal remedy, that's the end of it? And that's what he said. But, you know, you've got Justice Thomas to agree with. Well, and the recent Fifth Circuit decision in the AT&T case comes down the same way. They addressed both. They did find in that case it's a Communications Act penalty claim, and they did find that it's analogous, somewhat analogous, to a common law claim. Analogous to negligence, because the governing regulation required reasonable efforts or something like that. Correct. But then they went on to say, just like Jarczy said, it echoed the Jarczy statement that the more important and all but dispositive is the question of the remedy. And the quote from Toll... That's for purposes of the Seventh Amendment, not for purposes of public rights. Well, public rights is part of the Seventh Amendment argument here. Okay, I see. But you can have a claim that if it's brought in federal court, requires a jury. But that's, if it's a public right, that same claim may, consistent with Article III, be brought before an agency. And that's the part that I think you're reading out of Jarczy's... Okay, I see. And now I understand your question, and I'll answer that. So this does get us to the second point about all the, and I would point out, all the cases that the government cites here, Houston versus St. Louis, Wyeth, Crowell, none of them do the work that they want to do here. They're arguing that there's this line of so-called public health cases that create an exception to the Seventh Amendment jury trial right. Those cases don't at all apply in this context because they're all dealing with licensing issues, essentially. None of those cases involve a government seeking a civil penalty, a punitive penalty against a market participant as here. And again, back to the statement in Jarczy, it's the nature of the penalty, it's the nature, it's the substance of the remedy that is all but dispositive. The Supreme Court's opinion, and you didn't reply to this way, but in Grand Finicera, seems to support your analysis because the court said that there's a two-part inquiry, and the first is, it deals with whether the statutory action is analogous to something that was in the courts of England in the 18th century, and the second is the remedy. And so you're focusing on the remedy, but the court also said that the second inquiry is the most important. Well, the second... And the first is the public rights, but the second is the remedy, and the court did say in Finicera that's the most important part. And I just, I know I'm out of time just to address the final point, Your Honor. Yes, and I think the toll case itself directly repudiates the government's argument here because that was a Clean Water Act case. That was, you could argue that was a public health quote-unquote case as well. And nonetheless, the dispositive issue was the remedy being sought was a civil penalty. And the final point, well, I can address it. I know my time's up. I have time for rebuttal, unless there's another question. I'm past forfeiture and burden now, and I just want to ask about your view on the merits of public rights. One difficulty with your view is that if we look at all these cases in the public rights area, and it's fine to say it's a narrow, rare exception, but you look at these cases and they talk about tariffs, Indians, public lands from Jharkhand itself all the way back to Crowell versus Benson, foreign commerce, public lands, public health. It just seems like there are a lot of public rights that cut across different areas and cut across different governmental powers, including the Commerce Clause. Well, Your Honor, I think... And one way of understanding all of these cases is general rule. If the government as sovereign, if Congress gives the government as sovereign the right to seek the penalty, that's a public right. And Jharkhand qualifies that by saying, but not if that right tracks a common law claim. Well, I would... And that leads us to, I think, the conclusion, you win if and only if this claim is analogous enough to a pre-existing common law claim. I would strongly disagree with that characterization, Your Honor, because our position is Jharkhand does not... In fact, Jharkhand says the opposite, that Congress can create all the new so-called public rights enforcement mechanisms it wants or regulate in whatever area it wants. If the remedy being sought in the matter is a punitive civil money penalty, then under Jharkhand, under toll, that cannot be siphoned away from Article III courts. So you disagree with the notion that you win only if you can show that this is analogous to some common law claim, akin to the way the court in Jharkhand found that the securities fraud claim was analogous to common law fraud. You have no... You don't need to point to any such thing, and you haven't pointed to any such analog historically, because you're looking at this as the historical categories that you claim it doesn't fall into. They haven't shown that this kind of claim at common law would have been dealt with administratively. Well, I guess two answers. First is, and I hate to repeat myself, but I think this... It seems there's continuing sort of confusion on this point. We are saying that the claim has a common law analog, and it's the same one that toll in 1987 and Jharkhand said cannot be siphoned away. It's a civil remedy, a punitive remedy. That's the analog you were talking about. So in terms of the claim as opposed to the remedy, and I know you've cited the part of the Seventh Amendment analysis that talks about the remedy being the dominant factor, but assume we don't think that it is the dominant factor for purposes of the Article III analysis, the public rights analysis, and we're asking not the penalty, whether it has a common law analog, but whether the claim... And you mentioned licensing. I mean, to me, the claim here seems like unlicensed sale, and I thought you conceded that licensing was the kind of thing that would be dealt with in the political branches back in the day. Well, I'm referring to the kind of cases like Houston versus St. Louis, which was a sausage manufacturer challenging a food marketing licensing scheme. The question whether the government can... And this is what the government is... All those cases stand for the same point. They just merely reflect the government's power to regulate interstate commerce, or in some cases like Crowell, it's admiralty jurisdiction. It's disputes on the waters of the United States. But the fact that in the sausage case, the fact that the government can regulate an area, a certain industry under the interstate commerce power, which is what we're talking about here as well, does not mean that the government can siphon away civil remedy, civil money penalties under those schemes under JARTA. So that's a different issue, and that's something we'll ask the government about, whether this sort of sector-wide way of looking at public rights is really consistent with JARCAZ. So I hear you having that argument, and they'll be ready to respond to that. But just in terms of the analysis that was conducted in JARCAZ on the public rights question, which she was saying, okay, here the claim is a claim of fraud, of securities fraud. Let's look back to the common law at the time of the founding. We see that actually fraud claims were very common, and they were not done in agencies. They were done in courts. And so the question is, do you have a similar form of argument? And I take it that you don't, but I just want to confirm that you don't have a kind of claim that you're looking at here, a claim, you know, I shouldn't have to get a license, or, you know, I have an entitlement to, unless I'm aware that something that's sold to me is unlicensed, I have an entitlement to sell it on, or anything that's more about the actual claim that you're bringing. Right, and maybe it helps, let me clarify, we are not taking the position that the government may not place adjudications of licensing, whether a license should be granted. For example, whether a broadcast license should be granted to a media company, whether a license to sell pharmaceuticals or, here, tobacco products. The question of whether a license should be granted, and the application process, all of that, I'm not taking the position that that requires jury trials for any of those disputes. But what I'm relying on is the, what the government here is seeking is a punitive monetary penalty. Great, that's very helpful. So your primary analogy is the civil penalty, the action on the debt, I think was how Paul described it. And that's correct, Your Honor, and I think to get to your point, I think the reason that, I'm not saying that all civil penalties have to fall under the Seventh Amendment as well, but if there's a historical, there has to be an historical antecedent to the, let's say, the civil money penalty procedure, like there was in the Hoboken case, where the government was seeking to get back its money that was collected by a, you know, treasury official. That, the court said, that's the prime example, and that's the kind of antecedent you need here. That's not a civil penalty case. Right, and that's not a civil penalty, but it's the kind of thing that was... Could you give me a hypothetical of a civil penalty meted out by an administrative agency that wouldn't come under your rule, that would, it seems to me that every civil penalty action in an administrative state would have to require a jury trial. Well, and I think that's exactly what Toll and Jarxy say, but I'm not saying I've, you know, in the, given the breadth of federal activity today, is there something that the government hasn't thought of that it could, you know, I don't know, resurrect that was done before the Second Amendment was adopted? Can you distinguish the sort of, you know, novel public health sort of claim created here from the claim at issue in Atlas Roofing, or is your position just Atlas Roofing is overruled? Well, my position would be... It seems like the claim here and the claim in Atlas Roofing are, you know, very new, and sort of comes back to Judge Randolph's framing. That might mean you win. It might mean you lose. If we think Atlas is still good law, I think you lose. Well, and I realize that's, well, that's discussed directly by Jarxy itself, and Jarxy casts a cloud over... Reserves the question whether Atlas survives. Well, right, and they didn't have to decide it there, and that's correct, but it casts a very dark cloud over Atlas Roofing. I mean, if the Supreme Court has a precedent and then reserves whether it's overruled or not, I would think we have to apply it. Well, but I would argue, again, I would refer to the toll case, which was a Clean Water Act case, an entirely new statutory scheme. That is not dispositive. Well, the other, there's another difference, and in Jarxy, I'm probably mispronouncing it, but the court said that this was, that the 10b-5 action by the SEC against the company was in the nature of a common law action where, because it regulated transactions between individuals in a pre-existing market, I'm quoting, I don't have it in front of me, but I think that's it. The same is true here. The misbranding is regulating a transaction between consumers, right, in a pre-existing market. That was not true in Atlas. The regulation that was going on is not between consumers and a buyer and seller in a pre-existing market. That's correct as well. I agree with that. And I also would point out, just a final point, that the government has not relied on Atlas Roofing whatsoever here. There's a passing reference to the Ex-Alta Third Circuit case in their brief, which is almost a throwaway reference, but I think they step away from relying too heavily on Ex-Alta because they, I think the analysis is clearly wrong, as I've said in our brief, but one reason is that they rely on the Atlas Roofing manner of analysis without looking at the historical antecedent question. Judge Randolph just gave you a possible distinction of Atlas, which is a good bit less aggressive than your earlier answer to me, which is there is no distinction, but you still win because the law has moved on. Well, that's correct. I think both are true. I think, yes. Thank you, Your Honors. I reserve time for rebuttal. Good morning, and may it please the Court. David Peters, MAF, United States of America. I'd like to start with the public rights analysis. I think that the Petitioner has confused the two steps of directocy in saying that just because a civil monetary penalty is being assessed by the administration, that means the Seventh Amendment not only is implicated, but precludes the agency from doing so, and that's inconsistent with directocy and the Supreme Court's precedent. The entire second half of directocy's opinion wouldn't exist if all that mattered was whether the penalty was a monetary penalty, and it's also inconsistent with prior Supreme Court decisions that have held or upheld the application of a monetary penalty in the context of an administrative proceeding. I would point to the Oceanic Navigation Services case, which directocy cites approvingly, and that's a case in which there was a monetary penalty being assessed and was upheld because it was in the context of a public rights scheme. What's the government's position on how much Atlas roofing survives? I've given your friend a little bit of trouble on his briefing. I'm going to give you a little bit of trouble on yours. You don't cite Atlas roofing, which is the latest, best case for the government's position. You cite a Third Circuit case applying Atlas roofing, so you're sort of trying to get the benefit of it without embracing it. How much of Atlas do you think survives? Certainly the holding. May I just state a setback? I think this Court can rule in our favor and find the public rights scheme based on the precedents that we cite. I think this Court can rule in the government's favor and find this to be a public rights scheme based on the precedents that we cite in our briefing. Dominantly Houston and Crowell, I think, decide this case. That's a stretch. Houston is about the substantive validity of a legislative group. I don't think that's right, Your Honor. If you look at the regulatory scheme that issued in that case, that was a regulatory scheme that allowed the Secretary of Agriculture, yes, to issue it. Agency action being challenged was promulgation of a reg that would have excluded the challenger's cereal or whatever it is from, or sausage. I think it was sausage. Certainly, Your Honor, that case involved a prospective regulation, but it also involved, and I would encourage to go back and look at the relief that was being sought there, was that the statutory scheme allowed the Secretary of Agriculture not only to promulgate prospective regulations, but then also to make determinations about whether the products were helpful. It was a process of inspection and passing the sausages. If they didn't do that, then the sausages could not be shipped in interstate commerce. That is a factual determination that the Secretary of Agriculture could make only because it was a public rights scheme. In Stern v. Marshall, the Supreme Court says that if a claim involves a private right, even mundane factual disputes must be adjudicated by an Article III court. And so the ability of the Secretary in the St. Louis case... It seems fair enough the scheme might have contemplated administrative adjudication, and you have that sentence from Kroll on administrative adjudication with that long string cite, which includes Houston, but... Your Honor, the key is that there's factual determinations. I mean, there, the Secretary of Agriculture was precluding the shipment of good in interstate commerce, and it was based on a factual determination... Through a regulation that said if your sausage contains more than X percent of whatever it was, you can't call it sausage. It was pre-APA. I assume the in-district court, presumably on something like mandamus, I don't know, doesn't involve administrative adjudication at all. And I would point to page 44 of the opinion in which the Supreme Court is talking about the Secretary's making... What's the citation? Sorry. It is 249 U.S. 484. I'm happy to rely on Houston to explain why I think that supports our opinion. I think we win on other grounds as well, but just to explain it, whether the sausage is a false and deceptive is a question of fact. It was a determination that the Secretary of Agriculture was making as to the specific product that was being shipped. And if you go to the earlier part of the opinion, not 481, the upshot of the determination not to pass the sausage was that the sausage could not be shipped in interstate commerce and was excluded. And my point is that is a factual determination, right? It's not the imposition of monetary penalty, but it's a factual determination specific to that party. And those kinds of factual determinations can only be made in the context of a public rights scheme by the Secretary of Agriculture, right, if it's a public rights scheme. If this was a private right, that would have to be adjudicated by an Article 3 court. And that's when you look at Crowell, what Crowell is specifically citing Houston for is the proposition that these are familiar... Crowell seems to treat Houston as if it's about adjudication. I'll give you that. And Crowell itself says Houston is an example in which there is a Secretary and the agency is making factual determinations in the context of a public rights scheme. And so I think those all point in the same direction that this is a... Your earlier question was whether we have to rely on Atlas Roofing. And my point is I think this is another indication of Supreme Court precedent dating to 1919 that has treated regulatory programs like this as public rights schemes. I mean, it's a data point, but it's not a legal theory. The legal theory really comes from Atlas, which talks about data points of public health, see Houston... But Thomas as well, Your Honor. Thomas is another case in which... I think that there is several factors here that all point in the same direction of this being a public rights scheme. One, this is Congress exercising its right over hazardous food and drugs that are shipped in interstate commerce. It is clearly serving a public sovereign interest. This is the kind of thing that the Supreme Court in Crowell has pointed to as an example of a public rights scheme. And there is no comparator at common law to the specific claim that's being asserted here, which is that the tobacco product that was deemed adulterated and misbranded was adulterated and misbranded because it did not go through the premarket authorization process of the Tobacco Control Act. And that is, as the Supreme Court said in Wyeth, a substantial innovation on the misled by buying this product because the assumption would be, assuming it was a reasonable consumer aware of all the relevant facts, the assumption would be that every product that was put out for sale containing tobacco had been approved by the FDA. Your Honor, the statutory violation is not going through the premarket authorization process, which is the same process that exists in the FDCA for new drugs. You know, the United States here isn't placing itself in the position of an aggrieved consumer. Tell me how you distinguish this quotation from Jouretzky or Jouretzky. What matters is the substance of the suit, not where it's brought, who brings it, or how it's labeled. The object of the SEC is to regulate transactions between private individuals interacting in a preexisting market. The government's created claims, these causes of action are modeled on common law fraud and provide a type of remedy available only in the law courts. Is this a regulation of transactions between private individuals? No, Your Honor. The statutory violation here is not going through the... You can't have a transaction with this product unless you've got the FDA approved. That's regulating a transaction, isn't it? Your Honor, it's not between private individuals in the context of the market. It's between the seller and the buyer. Your Honor, the statutory violation here is the petitioner... They didn't sell any of this. Would that be a violation? They have to receive it in interstate commerce. The violation is 21 U.S.C. 33C. It's the receipt in interstate commerce and offering it for sale or passing it along. Is that a preexisting market? For tobacco products? Yeah. I think it is, Your Honor. I don't think that any time... Is this a type of remedy available only in the law courts? I thought the statute required any new tobacco product to be subject to preclearance, and there was a kind of delay in enforcement against e-cigarettes, but that doesn't mean that it was a preexisting market that was claimed. That may be right, Your Honor. I may be misspoke. Of course, tobacco products have been sold before, but this is a new regulation in that there had not been prior to this a requirement, common law or anywhere else, to have a free market authorization for tobacco products. Right. I mean, again, this is very similar to the FDCA, right, and other provisions that are regulating drugs or hazardous foods that are shipped in interstate commerce. And again, there isn't any analog that the petitioner cited to or that we're aware of, of the same kind of pre-market authorization requirement to ship such goods or to receive such goods and offer them for sale. Do you have a historical analog suggesting that this kind of controversy could have been resolved administratively? The examples that we have are the ones we provided, Your Honor. I don't have one, I don't have a historical analog. Sorry, just remind me, like, what's your best? I think the best examples are the Houston case, I think the Crowell's announcement of the Houston case, and then... No, no, no. History on... Oh, I see. You're citing... Okay. And I would say that... And then... You're citing Houston for history, not for precedent, for purposes of this case. I think so, Your Honor. I think as an example... I mean, your argument leads to the proposition that Article III court, this doesn't have to be adjudicated by an Article III court. That's our position. And it's within the province of the legislature, right? Congress has... Congress exercising its sovereign authority, authorized... Suppose that there were no judicial review. Would your argument still stand as exclusive within the administrative agency? Was that a modified my answer to your original question, Judge Randolph, which I think is it can be assigned to the agency in the first instance. Whether there was no judicial review at all might be a separate due process problem. That's obviously not the problem here. Part of the argument that there must be judicial review, where does that come from? Your Honor, whether the due process clause creates a separate independent requirement for eventual judicial review, I think what's been clear from Dirkusy and its prior precedents is that Congress may authorize an agency in the first instance... All precedents are prior, I think. I would say... I would look at the Thomas case, Your Honor, the Union Carbide case, where that was a scheme in which there was adjudication between private parties that was assigned to an administrator with limited judicial review, and the Supreme Court there upheld that. And again, I think that's another instance in which that was clearly a statutory scheme that had a licensing element that was enacted pursuant to Congress's interstate commerce power, and yet the Supreme Court there and subsequent decisions there were suggested that just because Congress is acting pursuant to its commerce authority means necessarily that there can't be a public rights scheme, and that can't be square with the Thomas case. I want to get back to your point. This is more of a commentary than a question. It seems to me Justice Gorsuch had a different take on this because he dealt not only with separation of powers and whatever, but he also said that the due process clause applied and to require an Article III court. And your response is, well, going to a different view is that would be an Article III question, so which is consistent with whether that upholds the statute or not is another question, but that's consistent with Justice Gorsuch's take. I think it's telling in Cherkesey that the majority opinion was very expressed and that was not supporting to address once and for all and at all time what counts as a public right. It didn't take a categorical approach, and we're not advocating for one here. We think this court can hold kind of this statutory scheme, you know, concerning the shipment of hazardous goods in interstate commerce is the kind of public rights scheme that can be assigned to an agency for adjudication in the first instance. I don't think that's breaking. What's your task? Because I read your brief to do a pretty broad job and talk about public health, and I'm not sure that Cherkesey really countenances a decision that would say there's a public health carve-out. Maybe, but we're not asking for that. We're not advocating for a general public health carve-out. I just don't think that kind of wide-scale kind of carving out huge chunks of commerce power is necessarily in line with the way in which Cherkesey said that, you know, you have to do careful analysis for every indication of a public rights scheme, and so I think it's fine for this court to say that, you know, like the FDCA's treatment of new drugs, like the Meat Inspection Act that was in the Houston case, you know, where Congress has exercised its authority to regulate the, you know, hazardous food or drugs that are shipped in interstate commerce, that is a public rights scheme that may be assigned to adjudication to an Article 3, sorry, to an agency without first going through a jury, so long as it doesn't codify a common law claim, and that's not the case here. Why is that not a broad public health carve-out? You're extrapolating from a case about sausage to a case about cigarettes, and both involve interstate commerce clause. What's the limiting principle if you're unwilling to say public health? Yeah, I see my time's up. I think in this context more than most it's difficult to draw very firm lines, and that's, again, another lesson of arbitrariness that the public rights exception is something that requires kind of careful analysis of specific things, specific implications of it, and I think this court can rule that the Tobacco Control Act, right, and maybe recognizing that it's very similar to something like the FDCA, is a public rights scheme. This particular type of claim where, you know, a tobacco product has been shipped in interstate commerce and received in interstate commerce that is misbranded and requirement is sufficient to say that this is a public rights scheme and it can be assigned to the agency. So are you agreeing with Mr. Nazbar about the analysis in his reply brief? He seems to say that you need to consider whether there's historical pedigree of adjudication of class of cases in the political branches. There's an alternative reading of jarczy which says it either has to have a historical pedigree of adjudication of political branches or it has to be a new right that doesn't codify a traditional common law claim, and the way you just put it, I thought you were actually stacking those on top of one another. Are those two separate ways that a government scheme of regulation can be determined to be a public right? I don't think there's an obligation on the government to point to a historical precedent, you know, dating back to the founding for an instance in which an agency, the adjudication of a type of claim has been assigned to an agency, and the reason for that is because, as you earlier mentioned, you know, even when something is a chooses, assign it to the judiciary for resolution, and so I don't think it's, I don't think the inference that that may have been the case in the past is a strong indication that it couldn't have assigned it to an agency. Do you mean any sort of historical grounding? I think historical examples of Congress signing matters like this to an agency, I think it's a good indication that this is the kind of thing that is a public right. That's not the history that they're talking about. The history they're talking about is 1789, 18th century, not what went on in the last 100 years. I think there's a different, another historical analysis, which is that, is it the kind of claim that it's a private right? And that's because it was, is or was, like in jurisdiction, so much like a common law claim that it's a private right that has to be assigned to an Article III court. I think here, too, that history points in our direction, because there isn't anything at common law that does look like a pre-market authorization requirement like the one in the FDCA and the Tobacco Control Act. So I think all of those factors all point in the same direction here. This is a novel regulatory scheme that isn't building on the common law. It's not premised on the same principles. And it's something that Congress enacted to address, you know, a public, uniquely sovereign interest in addressing, you know, the widespread crisis caused by widespread tobacco use, especially among the nation's youth. When the SEC sues administratively to enforce Rule 10b-5, which is the scheme in jarcossi, I assume they have to show deception, but they do not have to show injury to any investor, correct? I think that's correct, John. Okay. So that's an instance where Congress takes a pre-existing tort, which requires injury almost by definition, strips out the injury requirement, and, you know, injury-free misconduct. Like, that's somewhat different. And the court said close enough. You're right. So why can't we think of this? To me, this feels like an injury-free scheme of strict liability for unreasonably dangerous or defective products. I guess two things, right? One, Your Honor, you're right. In jarcossi, it had to be a close analog. It doesn't have to be exactly the same. But it's telling that in jarcossi, the Supreme Court says, look, when we've evaluated these fraud claims in the context of the security debt, we looked at common law fraud. Those are kind of like the principles in which Congress is borrowing from. It took soil with it. It would do this court no good to look to see the common law, whether this product was misbranded or adulterated, because whether it's misbranded or adulterated is defined by a statutory scheme that had no analog of common law. I mean, again, I point to White. The Supreme Court there said, you know, in a different context, but it said, you know, the premarket authorization process that has existed in the FDCA since the 1930s and now exists in the Tobacco Control Act was a substantial innovation on the common law. It just didn't have any analog. So you're right, Your Honor. I think there are situations where there may be hard cases about whether this is sufficiently like a common law claim, even if it has some differences. The whole history of the Tobacco Control Act and, you know, why Congress thought tort liability was inadequate. I mean, they were applying concepts of unreasonably dangerous product, and they were upset that tort claims were failing because cigarettes might be unreasonably dangerous, but they're not They didn't adopt existing state law regulations, and they didn't adopt analogs to the common law. They adapted this premarket authorization process that is very distinct and doesn't have any analog on the common law. And you keep mentioning that. I'm curious. What does it take to get the FDA? What would it have taken the FDA to approve this product? What would the manufacturer have to show? Yeah, Your Honor, we cite this a little bit in our brief, and I'm happy to point you to it. I mean, there's a few different ways in which a tobacco product can be approved. The most common is a few-market tobacco product application, which is a little bit of a mouthful. But it requires, and here I'm quoting from the wages case, among other things, information about a product's components and additives, the method by which it is manufactured, any proposed labing, and the assessment of its health risk. That's the information they have to apply. What's the standard for whether it's going to be approved by the FDA? The FDA must deny such an application, quote, unless it is shown that the product will be appropriate for the protection of the public health. And again, that is- That's the novel standard. It's all the information goes to whether it's appropriate for the protection of the public health, and it uses a particular historical moment in time as the benchmark for that. Precisely. If it was looked at without that benchmark, then no cigarette would be sold because none of them are appropriate to the public health. So it's looking whether it's an improvement over the market. I can't remember if it was 2014 or something like that. I think it was 2015, I believe. But yes, that's correct, Karen, right? Then looks and says, is this an improvement upon public health at the time of 2015 when there's just a benchmark for the Tobacco Control Act? No common law analog, and I take it that Mr. Nashvar hasn't claimed that there's any common law analog to that standard. No. No, he hasn't identified any. We're not aware of any that has a common law analog to that type of standard, which again- I gave you strict liability as one possibility. What do you think of Judge Randolph's fraud analog on misbranding? I don't think it's a fraud claim, Your Honor, or something like that. There isn't a- Fraud-like. Yes, I understand. It's not a deception, right, that's being addressed here. It's that there is this requirement to proceed through what is like a licensing regime. And what Fisher failed to do is take receipt of a product and offer for sale that didn't go through that licensing-like process. That just doesn't look a lot like fraud to me, or strict liability, or any other common law thing. I think misbranding is sort of a term of art. It's a kind of capacious- I mean, it doesn't actually mean that the labeling is the problem. Yes, Your Honor. I mean, if you look at the statutory definitions of adulterated and misbranded that we cite, you know, it's telling that it's not- those aren't defined in any way like you would think of a fraud or you would think of like an adulterated product. I mean, I'm looking at 21 U.S.C. 387B-6. So, this is the provision for why this product was- Can you say that again, please? Yes, sorry. 21 U.S.C. 387B-6. And a tobacco product shall be deemed to be adulterated if it is required by Section 387JA, which is the provision that requires premarket authorization of this title to have premarket review and does not have an order in effect under that provision. There's- it's common in everyone's experience when you listen to advertisements on the media and television, radio, that some products are advertised and at the end they say, this product has not been approved by the FDA and is not intended to cure any particular disease. That's a disclaimer, right? So that the consumer does not believe or is not led to believe that this is a product that the FDA has approved. Is that a requirement under the Food and Drug Act, that the disclaimers of that sort be accompanied products? Yeah, I'm not sure. I understand the line of questioning to be maybe there are- But it is so common that it would seem to me that it's perfectly rational to say that if a product does not have FDA approval and it's out on the shelves and there's no disclaimer on it that it's something for consumption, it necessarily follows it's been approved by the FDA and that's misbranding. I guess my point is, there may be certain forms of misbranding or adulteration of products that are the ones at issue here that might look more like a common law claim, maybe a fraud or strict liability. That's not this though, right? This is the reason the product is adulterated and misbranded is because it failed to go through the premarket authorization requirement required by the Tobacco Control Act, right? And just to be clear, this is- I'm sorry. Yes, and that is the reason why it's adulterated and misbranded and it's also the reason why there isn't a kind of common law analog because that requirement to go through the process didn't exist at common law. Back to jargassy for a minute. Different parts of the opinion cut in different directions. We look at the distinction of Atlas Roofing. There's some language that's helpful for you in 2B5, but I want you to focus on 2B1, which is the court's affirmative discussion of public rights. We've just gone through step one of the analysis, which they say that is the Seventh Amendment implicated, right? That's the question. The answer is clearly yes, and you haven't even contested that. Then they say if a suit is in the nature of an action at common law, right, which is just that first half of the analysis, which we've answered yes, then the matter presumptively concerns private rights and adjudication by an Article III court is mandatory. What do you do with that? It's a pretty strong statement. I guess for one, it's presumptively, right? There has to be a way to rebut that with the public rights. With a strong showing of history. I don't think it's a strong showing of history, right? I mean, it's a little bit hard because on the next page or what is my printout of the next page, but I believe it's 129, they then cite Oceanic Steam Navigation Company, right? And that's a case in which there was money penalties being assessed in which that was a public rights scheme. The data points are cut across different areas and different governmental powers. This rule statement is what it is. I thought your answer to that was that this isn't in the nature of an action of common law because it's new and because unlike in Jerkesy where yes, the SEC Act is new, but when you're answering the question, is this a violation? You're asking a very familiar common law fraud question. Whereas here when you're answering the question, is this misbranded? You're looking at, well, does this advance the public health? The reason I think the Ocean Steam Navigation question, the case is helpful, Your Honor, is because it's certainly the case in the first part of the Jerkesy analysis. What's being asked is, is this of a claim that's like common law? Is the money penalty the kind of thing that might complicate the 7th Amendment? Is the claim sufficiently like one heard in the law courts considering both the cause of action and the remedy? The second part of the analysis is mostly on the fraud element, Your Honor. I think that's the takeaway from Jerkesy. The reason why they say Grand Financierita controls because the fact that fraud and that the securities act more or less just adopted and codified a the court concluded it implicated private risks. And our point is that there isn't an analog to the fraud piece of the Jerkesy analysis because the thing that's being asserted here, which is that the product is adulterated and misbranded, isn't something that exists at common law. And so I think the analysis of Jerkesy is tricky, but I take the first part to mostly be focused on, is this the kind of thing that is implicative of the 7th Amendment? And the answer to that question in Jerkesy was yes, because it was a monetary penalty. We're not contesting that element of the analysis here. The second part of the analysis, I think, is about is this a private right because it is the kind of thing at common law? Part of that threshold analysis, the remedy is very strong for the challengers on monetary, and you haven't contested that. The cause of action piece, if you go back to Tull, that cuts against you as well. I don't think so, Your Honor. I mean, I think that is only if you treat both the cause of action and the remedy as both a civil monetary penalty assessment. I mean, the government threw an analogy to nuisance, the challengers to an action on a debt. But then, Your Honor, then Jerkesy's whole analysis of the fraud provision doesn't... That has to fit in the analysis. I think that's the reason why this is a private right, in Jerkesy, at least, right? It's because fraud, the Securities Act fraud provision, just built on common law fraud principles. And our point is that's plainly not the case here. And so I think the way to read Jerkesy is to say, once the civil monetary penalty, if there's still a monetary being assessed, which implicates the 7th Amendment, then you have to look to see, is this the kind of thing that was decided at common law? And the analysis there is about the fraud provisions. And our point here is... I mean, that creates a weird, near total overlap between the, is the 7th Amendment implicated question and does the public rights exception apply question? I don't think so, Your Honor. I think if you... The implication question has a cause of action dimension and a remedy dimension measuring the statutory scheme relative to the common law. And maybe, I think, I'm not sure I'm fully following, but... I'm sorry. I might be talking in shorthand too much. I think that it's right that if all that mattered was if the civil monetary penalty being assessed, then the first and second steps of the analysis would almost always be such. Because if civil monetary penalty is something that implicates the 7th Amendment... You think the threshold applicability question is largely, or more importantly, about the remedy and the public rights exception question is centrally about the cause of action? Yes, Your Honor. I think that's right. But I just want to be very clear when I say that I think it's possible to look at it as if the cause of action is a civil monetary penalty. That's a little bit how the first part of the analysis is conducted. And the second part of the analysis, clearly, it's really about the fraud provision, right? I mean, that's the way the court says that Atlas Roofing is still good law. It's because that didn't have any parallel in the common law, but, of course, there was a civil monetary penalty being assessed there. So if all that mattered was whether it's a civil monetary penalty, I think both Atlas Roofing would have to be overturned. I think ocean navigation services would also be wrong. And so I think that all indicates that the analysis at the second step in the public rights piece is... I don't have the right framing for it, but is the substance of the claim something that exists in the common law? In Cherkessia, that was yes, because fraud, the Securities Act provisions built on common law fraud. And here, the answer to that question is no, because the enforcement of the adulterated and misbranded provisions that are at issue here don't have any parallel at the common law. Last question for me is about the Fifth Circuit opinion, AT&T. Judge Duncan, in that case, ruling against the government, drew a somewhat... I don't know what the right word is, creative analogy to negligence. He said the analogy in that case to negligence was a good bit less obvious than the analogy in Cherkessia to fraud. You all petitioned for cert in that case, but you did not contest that point. You contested only the de novo, on whether de novo review of the NAL solves the Seventh Amendment problem. So, has the government accepted the Fifth Circuit ruling that the analogy in that case was close enough? As you know, decisions about the government, what to appeal, what to seek cert on. Understood. If you tell me the government has no position, I will accept that. But I thought it was odd that you did not take that up. I will say, just to get that back, though, I would say, you know, in Atlas Roofing as well, you could have analogized those to some kind of premises liability or some other kind of negligence claims there. Or in some instances, you could even also analogize them to some form of strict liability claims. And that was not a sufficient connection, at least for the Supreme Court in Cherkessia to say that Atlas also concerned private rights. And so, I think that the indication from Cherkessia is, you know, same basic principles. You know, you look to the common law to determine how to analyze this. And there may be difficulty about how far that goes. AT&T might be close enough. This case isn't. Yes, exactly. Okay. Thank you. If there are no other questions. I just wonder if you have any, you haven't taken up Exalta. Is there any further, do you have any reflections on how you would decide this case differently or whether you embrace the analysis in that case? In Exalta? Yes. We think Exalta was decided correctly. There, the court principally relied on an Atlas roofing. I think the analysis here could look to a kind of a richer history about regulation in this area as it concerns hazardous foods and drugs, both in terms of Houston, as we've already discussed, but also, I think the long history of the FDCA having almost the exact same set of provisions here. And no one has ever suggested that the FDCA is a private right scheme. And so I think all those things taken together point in the same direction. And again, not all those principles are present in the Exalta case. Anything more, Ryan? No questions. Thank you. So, with respect to the analysis in Xerces, I just want to call the court's attention because I went back and looked and that, so it's pretty clear in the way they discussed this. These are alternative holdings or alternative reasons for holding that a claim implicates the Seventh they go on to discuss the remedy. Beginning at 125, they say, in sum, the civil penalties in this case are designed to punish and deter, not to compensate. They are therefore, quote, a type of remedy at common law that could only be enforced in the courts of law, period. That's a quote from Tull. Then they transition to their discussion of the, you know, but the way they lead into that discussion, they say the close relationship between these causes of actions, in this case in common law fraud claims, confirms the conclusion we've already made that the Seventh Amendment applies. And I would submit to the court that, I mean, as you know, the Supreme Court engages in alternative holding and they're both binding. If the court gives alternative reasons for a ruling as a matter of Supreme Court law, both of those are effective. It doesn't matter which one they discuss first or second. And also, the Tull was decided after Atlas Roofing. And Tull was the government seeking a penalty for violation of a novel statutory scheme. Tull came after Atlas Roofing and supports our position. And the last thing I want to say is just to call attention to the radicality of the FTA's position here. If the government can essentially create a new licensing scheme or marketing scheme over a certain industry and say, because this is a novel statutory scheme, we can siphon all of the, you know, disputes under it, including for civil money penalties away from Article III courts, that's a very radical position. That's not what the case law supports. I think they're saying that they can, they may be public rights, they're novel, so long as the claims are not closely akin to a common law claim. So it's less radical than the way you just described it. And my response to that would be that the way that JRC discussed as Tull says that means that the claim you refer to as the civil penalty is the type of claim that demands Article III court. Thank you. In case of submitted. Thank you very much.
judges: Pillard; Katsas; Randolph